[No. D029634. Fourth Dist., Div. One. Apr. 13, 1998.]

POWAY UNIFIED SCHOOL DISTRICT, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
THE COPLEY PRESS INC., Real Party in Interest.

1498

**COUNSEL**

Stutz, Gallagher, Artiano, Shinoff & Holtz, Daniel R. Shinoff and Jack M. Sleeth, Jr., for Petitioner.

No appearance for Respondent.

Gray, Cary, Ware & Friedenrich and Guylyn R. Cummins for Real Party in Interest.

Thomas W. Newton, James E. Grossberg, and Anne H. Egerton as Amici Curiae on behalf of Real Party in Interest.

**OPINION**

**McINTYRE, J.—**

### ISSUE

We decide here whether a claim form submitted by a minor to a public school district under the California Tort Claims Act (hereafter the Claims Act) (Gov. Code,[1] § 910 et seq.), is protected against disclosure under (1) certain exemptions in the Public Records Act (§ 6254, subd. (b) or 6255), or (2) the Family Educational Rights and Privacy Act (hereafter FERPA) (20 U.S.C. § 1232g) and/or Education Code section 49060. We conclude these provisions of law do not protect the information from disclosure.

### FACTUAL AND PROCEDURAL BACKGROUND

As part of a hazing incident at a high school in the Poway Unified School District (District) in March 1997, three 16-year-old sophomores brutally

---

[1]All statutory references are to the Government Code unless otherwise specified.

sodomized a 15-year-old freshman student with a broomstick. After the perpetrators pleaded guilty, they were sentenced in juvenile court. In proceedings attended by the media, the victim's identity was disclosed.

The media provided wide coverage of the sentencing court's comments excoriating the District for tolerating a climate of abusive initiation practices. In addition, the parents of the perpetrators agreed to the public release of confidential juvenile court records and files concerning prior hazing incidents to publicize the history of hazing at the high school. However, in accordance with its own policy, the Union-Tribune, a San Diego newspaper, did not publicize the name of the victim or the perpetrators.

One of the perpetrators then submitted a Claims Act claim against the District. The claim apparently included a description of prurient details about the attack. There were also claims submitted by other students, based on different hazing incidents at the same high school.

The victim did not submit a formal Claims Act claim to the District. However, the victim's attorney sent a letter in May 1997, urging settlement of the victim's potential claim, and raising the issue of confidentiality: "Because I am keenly aware of your duties as trustees for the children and residents of your community I believe that you will want to deal with your district's liability to [the victim] in a professional and, if possible, a confidential way." The victim and the District did settle, in part to protect the privacy of the victim, and the superior court ordered the settlement sealed. Nonetheless, in September 1997, the victim's attorney and the District participated in a press conference to announce the fact of settlement.

Meanwhile, in July and August 1997, the Union-Tribune sought access "to any and all [Claims Act] claims filed with the District between March 20, 1997 through July 18, 1997" under the Public Records Act. However, the District refused to provide unresolved claims, citing the "open claims" exemption to the Public Records Act and its own concern about protecting the privacy of the minor victim of the assault. (§ 6254, subd. (b).) The Copley Press Inc. (Copley), publisher of the Union-Tribune, thereupon filed a petition for writ of mandate in the trial court, contending these reasons for nondisclosure did not apply.

The trial court granted the writ; ordered the District to produce records with names, addresses and telephone numbers of the minors redacted; and denied the request for stay. It also awarded attorney fees and costs to Copley pursuant to section 6259. The District has produced redacted records in compliance with the order.

The District filed this petition, asking for published guidance concerning its duties on an issue likely to recur.[2] Other media representatives joined Copley's opposition as amici curiae, and the County of San Diego expressed its particular interest in clarification of the issue under FERPA (20 U.S.C. § 1232g), and/or Education Code section 49060.

## DISCUSSION

The Public Records Act specifies that any public record in the possession of a state or local agency must be disclosed to any citizen unless an exemption applies. (§ 6253.) It enumerates specific exemptions, and also provides a catchall withholding clause, allowing nondisclosure of a record if the government can demonstrate that public policy necessitates nondisclosure. (§§ 6254, subd. (b), 6255.)

"Public records" is defined in broad terms, to include: "[A]ny writing containing information relating to the conduct of the public's business prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics." (§ 6252, subd. (d).) This broad definition is designed to protect the public's need to be informed regarding the actions of government, as expressed both in the Public Records Act and in the open meeting requirements of the Ralph M. Brown Act (§ 54950 et seq.). (Note, *The California Public Records Act: The Public's Right of Access to Governmental Information* (1976) 7 Pacific L.J. 105, 110-111.) Indeed, secrecy is "antithetical to a democratic system of 'government of the people, by the people [and] for the people.' " (*San Gabriel Tribune* v. *Superior* Court (1983) 143 Cal.App.3d 762, 771-772 [192 Cal.Rptr. 415].)

Balanced against the public's right to know is the victim's right to privacy. (See Welf. & Inst. Code, § 676, subd. (b) [barring the public from juvenile court hearings, even on serious crimes, upon request of the victim]; Pen. Code, § 293.5 [analogous protections in criminal proceedings]; § 6254, subd. (f)(2) [allowing a state or local agency compiling law enforcement records to withhold the name of a minor victim of enumerated crimes at the request of his parent]; and § 54961, subd. (b) [Brown Act exception to disclosure requirements in sex crime cases].) *People* v. *Ramirez* (1997) 55 Cal.App.4th 47 [64 Cal.Rptr.2d 9], eloquently articulated the privacy concern for these types of crimes:

"There can be little dispute that the state's interest in protecting the privacy of sex offense victims is extremely strong and fully justified. 'No

---

[2] " 'If an action involves a matter of continuing public interest and the issue is likely to recur, a court may exercise an inherent discretion to resolve that issue, even though an event occurring during its pendency would normally render the matter moot.' " (*Morehart* v. *County of Santa Barbara* (1994) 7 Cal.4th 725, 746-747 [29 Cal.Rptr.2d 804, 872 P.2d 143], quoting *Liberty Mut. Ins. Co.* v. *Fales* (1973) 8 Cal.3d 712, 715-716 [106 Cal.Rptr. 21, 505 P.2d 213].)

crime is more horribly invasive or more brutally intimate than rape.' [Citation.]" (55 Cal.App.4th at p. 53.)

" 'Privacy' is not an insignificant interest—it is described in our state Constitution as one of our 'inalienable rights.' (Cal. Const., art. I, § 1.) In the context of the victim of a sex offense, our Legislature . . . has likewise determined that the privacy interest of such a victim is significant. . . . [M]any victims are reluctant to report sex offenses 'because of fear they will be publicly identified and humiliated.' [Citation.]" (55 Cal.App.4th at p. 56.)

In this context, we discuss the various bases for withholding the claims presented here.

1. *Exemption Under Section 6254, Subdivision (b)*

Section 6254, subdivision (b) provides:

"[N]othing in this chapter shall be construed to require disclosure of records that are any of the following:

"(b) Records pertaining to pending litigation to which the public agency is a party, or to claims made pursuant to Division 3.6 (commencing with Section 810), until the pending litigation or claim has been finally adjudicated or otherwise settled."

To initiate litigation against a public entity, it is well established that a plaintiff must first file a claim under the Claims Act. (§§ 945.4, 912.4; *Munoz* v. *State of California* (1995) 33 Cal.App.4th 1767, 1776 [39 Cal.Rptr.2d 860].) Section 910 specifies the information to be included, some of which may implicate privacy concerns. Many public entities provide forms for this purpose. (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 1997) ¶ 1:681, p. 1-144, rev. # 1, 1996.)

There are no California cases deciding whether the exemption of section 6254, subdivision (b) encompasses the actual claim form itself. Although the Public Records Act is modeled on the federal Freedom of Information Act (5 U.S.C. § 552), the federal statute contains no comparable provision for guidance in interpreting the California statute. (Schaffer, *A Look at the California Records Act and its Exemptions* (1974) 4 Golden Gate L.Rev. 203, 216.)

There is a 1988 opinion by the California Attorney General, which concludes the exemption does not encompass the Claims Act claim form

itself. (71 Ops.Cal.Atty.Gen. 235, 238 (1988).) The Attorney General reasoned the word "pertain" means "to relate, to belong, to be pertinent to something else," and the claim form itself was that "something else" not encompassed in the exemption.

However, the language of section 6254, subdivision (b) is also susceptible to a different interpretation, advocated by the District, reflecting the common parlance usage of "claim" as a set of facts giving rise to obligations. (See *DeCastro West Chodorow & Burns, Inc.* v. *Superior Court* (1996) 47 Cal.App.4th 410, 421 [54 Cal.Rptr.2d 792].) In this sense, the claim form itself "pertains to" the underlying operative facts. Under this interpretation, the language of the exemption would include the claim form.

Based on the existence of more than one reasonable interpretation of the statute, it seems to us that the language of the statute, "pertaining . . . to claims," is ambiguous. ■ When an examination of the plain meaning of the pertinent terms of a statute fails to resolve a dispute, we next consider the context in which the words appear, and attempt to harmonize the words of the statute within the overall statutory scheme. (*People* v. *Valladoli* (1996) 13 Cal.4th 590, 599 [54 Cal.Rptr.2d 695, 918 P.2d 999].)

■ Here, harmonization supports the conclusion that Claims Act claim forms are not exempt from disclosure pursuant to section 6254, subdivision (b). A related statute, part of the Brown Act, expressly acknowledges the availability of the Claims Act claims themselves for public inspection, referencing the Public Records Act. (§ 54956.9, subd. (b)(3)(C).)[3]

The principle of striving for harmony between disparate parts applies even though the two provisions are in separate codes. (*O'Brien* v. *Dudenhoeffer* (1993) 16 Cal.App.4th 327, 332 [19 Cal.Rptr.2d 826].) ■ Under the

[3]Section 54956.9, sets forth six circumstances where "existing facts and circumstances" suggestive of "significant exposure to litigation" allow a closed session to be held by the legislative body of a local agency, and provides that one of the six circumstances is:

"(b)(1)(C) The receipt of a claim pursuant to the Tort Claims Act or some other written communication from a potential plaintiff threatening litigation, *which claim or communication shall be available for public inspection pursuant to Section 54957.5.*" (Italics added.)

Section 54957.5. in turn provides:

"(a) Notwithstanding Section 6255 or any other provisions of law, agendas of public meetings and any other writings, when distributed to all, or a majority of all, of the members of a legislative body of a local agency by any person in connection with a matter subject to discussion or consideration at a public meeting of the body, are disclosable public records under the California Public Records Act, . . . and shall be made available upon request without delay. However, this section shall not include any writing exempt from public disclosure under Section 6253.5, 6254, or 6254.7.

"(b) Writings which are public records under subdivision (a) and which are distributed during a public meeting shall be made available for public inspection at the meeting if

extrinsic interpretive principle of in pari materia, two statutes touching upon a common subject are to be construed in reference to each other, so as to " 'harmonize the two in such a way that no part of either becomes surplusage.' " (*DeVita* v. *County of Napa* (1995) 9 Cal.4th 763, 778 [38 Cal.Rptr.2d 699, 889 P.2d 1019], quoting *Mar* v. *Sakti Internat. Corp.* (1992) 9 Cal.App.4th 1780, 1784 [12 Cal.Rptr.2d 388].)

The District contends these Brown Act provisions have no bearing on this case, because they apply only upon distribution of a Claims Act claim to the members of a legislative body of a local agency, in a closed session; and the mere act of distributing the claim at a closed meeting effects a waiver of the exemption from disclosure. We find this distinction untenable, because section 54956.9 simply announces the preexisting status of the Claims Act claim itself as a disclosable public record. It is merely a matter of convenience to have the claim available to the public at the time of the meeting.

That section 6254, subdivision (b) does not exempt Claims Act claim forms is further bolstered by an examination of both the legislative history of the statute and the wider historical circumstances of its enactment in ascertaining legislative intent. (*People* v. *Valladoli, supra,* 13 Cal.4th at p. 602.) The March 1970, Final Report of the California Assembly Statewide Information Policy Committee, at page 9, offered this explanation for its proposed version of the statute, a version adopted by the legislature without significant modification: "Records relating to [litigation and claims] are available after adjudication or settlement. This section, in effect, upholds the attorney-client privilege. Subsections (f) and (k) also contribute to the strength of that privilege."

The reference to the attorney-client privilege demonstrates an intent to protect only documents created by the public entity.

■ As explained in *Roberts* v. *City of Palmdale* (1993) 5 Cal.4th 363 [20 Cal.Rptr.2d 330, 853 P.2d 496]: "Subdivision (b) [of section 6254] '. . . was primarily designed to prevent a litigant opposing the government from using the [Public] Records Act's disclosure provisions to accomplish earlier or greater access to records pertaining to pending litigation or tort claims than would otherwise be allowed under the rules of discovery . . . .' " (*Id.* at p. 372, quoting Note, *The California Public Records Act: The*

---

prepared by the local agency or a member of its legislative body, or after the meeting if prepared by some other person.

" . . . . . . . . . . . . . . . . . . . . . . . . .

"(d) This section shall not be construed to limit or delay the public's right to inspect any record required to be disclosed under the requirements of the California Public Records Act . . . ."

*Public's Right of Access to Governmental Information, supra,* 7 Pacific L.J. 105, 131, fns. omitted; accord, *City of Los Angeles* v. *Superior Court* (1996) 41 Cal.App.4th 1083, 1087 [49 Cal.Rptr.2d 35].) There is no unfair disadvantage to the public entity from disclosure of the mere claim form. Thus, a Claims Act form itself does not fall within the exemption of section 6254, subdivision (b).

### 2. *Exemption Under Section 6255*

Section 6255 offers a catchall exemption from disclosure: "The agency shall justify withholding any record by demonstrating that the record in question is exempt under express provisions of this chapter or that on the facts of the particular case the public interest served by not making the record public clearly outweighs the public interest served by disclosure of the record."

■ Minors, as well as adults, possess a constitutional right of privacy under the California Constitution. (*American Academy of Pediatrics* v. *Lungren* (1997) 16 Cal.4th 307, 334 [66 Cal.Rptr.2d 210, 940 P.2d 797].) ■ Proof of an invasion requires not only a legally protected privacy interest, but also a reasonable expectation of privacy in the circumstances, and conduct by the defendant constituting a serious invasion of privacy. (*Id.* at p. 330; *Hill* v. *National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 40 [26 Cal.Rptr.2d 834, 865 P.2d 633].) ■ Under the facts presented here, the second and third elements of a privacy claim are absent.

First, there has been no showing of any reasonable expectation of privacy under the circumstances. While section 910 does require a claimant to provide some potentially private information, generally, one who submits a tort claim has no reasonable expectation of privacy. (*Register Div. of Freedom Newspapers, Inc.* v. *County of Orange* (1984) 158 Cal.App.3d 893, 902 [205 Cal.Rptr. 92].)

Here in particular, the victim's request for confidentiality was equivocal in its phrasing, asking only for confidentiality "if possible." The request was also circumstantially equivocal, in that the victim's attorney participated in a press conference about the settlement. And there is no evidence here that the victim exercised his options for pursuing confidentiality under Welfare and Institutions Code section 676, subdivision (b), or argued for the applicability of rights under Penal Code section 293.5.

Nor has the District established conduct by the Union-Tribune evincing a serious invasion of privacy. The newspaper has a policy of protecting the

identity of victims of sex crimes and juvenile offenders. The information is relevant to a legitimate and important competing public interest in ending school hazing practices potentially endangering many children. The importance of public scrutiny of proceedings involving serious juvenile crimes is recognized in Welfare and Institutions Code section 676, which allows members of the public to attend hearings involving serious crimes such as rape, sodomy or assault. Importantly, the District has the power to address privacy concerns by redacting released materials, under the supervision of the trial court, as was ultimately done here. (*U.D. Registry, Inc.* v. *State of California* (1995) 34 Cal.App.4th 107, 115 [40 Cal.Rptr.2d 228].)

Under these facts, the public interest served by withholding the claims does not clearly outweigh the public interest served by disclosure of the record. (§ 6255.) As such, the District has failed to justify withholding any record under this exemption.

3. *Exemption Pursuant to FERPA or Education Code Section 49060*

■ The apparent purpose of FERPA is to ensure access to educational records for students and parents and to protect the privacy of such records from the public at large. (*Bauer* v. *Kincaid* (W.D.Mo. 1991) 759 F.Supp. 575, 590-591 [112 A.L.R.Fed. 671].) FERPA conditions federal educational funding on maintaining the privacy of "education records other than directory information . . . ." (20 U.S.C. § 1232g(b)(2).) Education records consist of "those records, files, documents, and other materials which [¶] (i) contain information directly related to a student; and [¶] (ii) are maintained by an educational agency or institution or by a person acting for such agency or institution." (20 U.S.C. § 1232g(a)(4)(A).)

Section 49060 of the Education Code was enacted to ensure receipt of federal funding by manifesting compliance with FERPA. To that end, its provisions expressly prevail over the Public Records Act, as pertains to pupil records. Like FERPA, Education Code section 49061, subdivision (b) broadly defines pupil records[4] and prohibits release of any "pupil record" except as specified in Education Code section 49073 et seq. Under these provisions, if the Claims Act claims are "pupil records," the Union-Tribune

---

[4]Education Code section 49061, subdivision (b) provides in part:

" 'Pupil record' means any item of information directly related to an identifiable pupil, other than directory information, which is maintained by a school district or required to be maintained by an employee in the performance of his duties whether recorded by handwriting, print, tapes, film, microfilm or other means.

" 'Pupil record' shall not include informal notes related to a pupil compiled by a school officer or employee which remain in the sole possession of the maker and are not accessible or revealed to any other person except a substitute."

would have access to them only with written parental consent or under judicial order. (Ed. Code, § 49076.)

It defies logic and common sense to suggest that a Claims Act claim, even if presented on behalf of a student, is an "educational record" or "pupil record" within the purview of these exemptions. Just because a litigant has chosen to sue a school does not transmogrify the Claims Act claim into such a record. We therefore conclude the release of such a claim implicates neither FERPA nor its California counterpart.

### DISPOSITION

The District's petition to vacate the trial court's order granting the petition for writ of mandate is denied. Copley is awarded attorney fees and costs. (See § 6259, subd. (d).)

Work, Acting P. J., and Nares, J., concurred.

Petitioner's application for review by the Supreme Court was denied July 29, 1998. Kennard, J., was of the opinion that the petition should be granted.